## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**SMITH & STEIN**
David Stein
Empire Corporate Center
25 Philips Parkway
Montvale, New Jersey 07645
(201) 391-0770
Attorneys for Plaintiff
Prime Capital Group, Inc.

| | |
|---|---|
| Prime Capital Group, Inc., a New Jersey Corporation, <br><br>                 Plaintiff, <br><br>        - vs. - <br><br> Monroe J. Klein, <br><br>               Defendant. | CIVIL ACTION NO. 07-414 (JLL) <br><br> **COMPLAINT** |

Plaintiff Prime Capital Group, Inc., by and through its undersigned attorneys, for its complaint against Monroe J. Klein, alleges as follows:

### THE PARTIES

1. Plaintiff Prime Capital Group, Inc. ("Prime Capital"), is a New Jersey corporation with principal offices at 565 Highway 35, Suite 10, Red Bank, New Jersey.

2.    Upon information and belief, defendant Monroe J. Klein is a New York resident with an address of 40 Coverly Avenue, #N, Staten Island, New York.

### JURISDICTION AND VENUE

3.    This court has jurisdiction under 28 U.S.C. § 1332 because the amount in controversy is greater than $75,000, and there is complete diversity of citizenship because plaintiff is a New Jersey citizen, and defendant is a citizen of New York.

4.    Venue in New Jersey is appropriate because plaintiff is a citizen of New Jersey, and the terms of the agreements constituting the cause of action in this case explicitly contain a forum selection clause naming the courts of New Jersey as the agreed-upon jurisdiction.

5.    In addition, the underlying acts which form the basis of this complaint took place in Union County, New Jersey.

### FACTS

6.    At all times relevant herein, Monroe J. Klein was the President and Chairman of the Board of AM Industries, Inc. ("AMI").

7.    On or about October 17, 1995, Prime Capital contracted with AMI to purchase accounts receivable from

2

AMI by means of an Accounts Receivable Purchase Agreement. (A Copy of this Agreement is attached as Exhibit A.)

8.    Pursuant to this Agreement, Prime Capital would periodically purchase accounts receivable from AMI, according to the terms agreed upon.

9.    For several years, the business arrangement between AMI, being run by its then-president Joseph Ficara, and Prime Capital went smoothly.

10.   In or around the year 2000, however, Monroe J. Klein replaced Joseph Ficara as president and chairman of AMI.

11.   Prime Capital continued to do business with AMI after Klein became its principal.

12.   After Klein became the principal of AMI, AMI began going further and further into debt to Prime Capital.

13.   By 2005, there were approximately $1,424,233.96 in receivables sold to Prime Capital that had not been collected upon.

14.   Upon information and belief, the reason that these receivables were not able to be collected upon was because the underlying invoices upon which they were based, most of which were purportedly directed to Linens N Things, had been partially or wholly fabricated by defendant Klein.

3

15. Additionally, upon information and belief, Klein accepted payments on some of AMI's accounts receivable, but rather than turning them over to Prime Capital as the Agreement required, Klein retained the money for his personal use.

16. Upon information and belief, Klein applied for and secured a loan from the 9/11 compensation fund some time from 2003 through 2004 on the ground that AMI's business had been adversely affected by 9/11.

17. Klein induced Prime Capital to continue its relationship with AMI by telling it that he would use monies secured from this loan to help pay down his balance to Prime Capital.

18. Instead, after Klein secured the loan, he informed Prime Capital that he was going to use the money to pay himself.

**THE NOTE**

19. In March 2000, defendant Klein, in his capacity as Chairman of the Board of AMI, signed a promissory note in the amount of $605,788.00, with a term of twenty-four months and an interest rate of 6% per year. (A copy of this Note is attached as Exhibit B.)

4

20. Upon information and belief, at the time Klein signed this note on behalf of AMI, he had no intention of paying back the monies owed.

21. In March 2002, AMI defaulted under the terms of the Note.

22. Prime Capital contacted Monroe Klein and demanded payment from AMI, but payment was not made.

23. The Note provides for the borrower to pay reasonable attorney's fees if Prime Capital is required to retain an attorney to collect on the Note.

24. By reason of the necessity of bringing this action, attorneys' fees and costs of suit have been or will be incurred by Prime Capital.

25. Upon information and belief, AMI ceased operations at the end of 2005.

26. The New Jersey Department of Revenue revoked AMI's corporate registration in 2006 for failure to file an annual report for 2004 or 2005.

27. At the time AMI ceased operations, Klein promised Prime Capital that he would make arrangements to pay down AMI's debt to Prime Capital.

28. However, Klein made no such arrangements.

29.  In fact, Klein stopped communicating with Prime Capital in any way and refused to respond to Prime Capital's attempts to contact him.

30.  As of August 2006, including accrued interest, defendant owed plaintiff a total of $2,404,560.26.

## COUNT I

### (Breach of Contract – Accounts Receivable)

31.  Prime Capital Group, Inc., repeats and realleges the foregoing allegations as if set forth fully herein.

32.  Prime Capital entered into contracts with AMI to buy various accounts receivable.

33.  Although AMI was nominally a corporation, at the time these contracts were entered into, defendant Klein was using AMI as his alter ego, without disclosing this to Prime Capital.

34.  Defendant failed to fulfill his obligations under these contracts.

35.  Defendant's failure to pay monies owed to Prime Capital as contracted for constituted a material breach of his contracts with Prime Capital.

WHEREFORE, plaintiff Prime Capital Group, Inc., requests that defendant be ordered to pay plaintiff the amount of $1,516,526.94, plus pre- and post-judgment

interest at the statutorily-defined rate, and awarding reasonable costs and expenses, including attorneys' fees, and such other relief as shall be determined to be just.

## COUNT II

### (Breach of Contract – Note)

36. Prime Capital Group, Inc., repeats and realleges the foregoing allegations as if set forth fully herein.

37. AMI signed a Note payable to Prime Capital.

38. Although AMI was nominally a corporation, at the time AMI assumed the obligation when Klein signed the Note on behalf of AMI, defendant Klein was using AMI as his alter ego, without disclosing this to Prime Capital.

39. Defendant failed to fulfill his obligations under the contract.

40. Defendant's failure to repay monies owed to Prime Capital as contracted for constituted a material breach of his contract with Prime Capital.

WHEREFORE, plaintiff Prime Capital Group, Inc., requests that defendant be ordered to pay plaintiff the amount of $888,033.32, plus pre- and post-judgment interest at the rate of 6% per annum, and awarding reasonable costs and expenses, including attorneys' fees, and such other relief as shall be determined to be just.

## COUNT III

### (Fraud - Accounts Receivable)

41.   Prime Capital Group, Inc., repeats and realleges the foregoing allegations as if set forth fully herein.

42.   Defendant Klein sold numerous accounts receivable to Prime Capital.

43.   Each time Klein did so, pursuant to the Accounts Receivable Purchase Agreement, he explicitly represented to Prime Capital that the accounts receivable he was selling were valid, true, and accurate and undisputed statements of indebtedness owed to him by his customers, arising out of bona fide business transactions in the ordinary course of business of AMI.

44.   Because Prime Capital had done business with AMI for many years without problem, it had no reason to suspect that these representations were false.

45.   Prime Capital, therefore, reasonably relied upon these representations by Klein.

46.   Prime Capital would not have purchased these accounts receivable from AMI in the absence of Klein's representations.

47.   In fact, Klein's representations were false.

8

48. The receivables Klein was purportedly selling to Prime Capital, primarily identified as invoices for Linens N Things, had been fabricated by Klein.

49. Prime Capital was unable to collect upon these fictitious invoices and was damaged thereby.

WHEREFORE, plaintiff Prime Capital Group, Inc., requests that defendant be ordered to pay plaintiff the amount of $1,516,526.94, plus pre- and post-judgment interest at the staturorily-defined rate, and awarding reasonable costs and expenses, including attorneys' fees, and such other relief as shall be determined to be just.

## COUNT IV

### (Fraud - Promissory Note)

50. Prime Capital Group, Inc., repeats and realleges the foregoing allegations as if set forth fully herein.

51. Because AMI had gone so far into debt to Prime Capital, defendant Klein signed a Promissory Note on behalf of AMI, payable to Prime Capital.

52. At the time Klein did so, he represented to Prime Capital that AMI was prepared to pay the Note back.

53. Because Prime Capital had done business with AMI for many years without problem, it had no reason to suspect that this representation was false.

9

54.   Prime Capital, therefore, reasonably relied upon this representation by Klein.

55.   Prime Capital would not have agreed to the Note in the absence of this representation.

56.   In fact, Klein's representation was false.

57.   Klein did not have any intention of paying back the monies owed under the Note.

58.   Prime Capital was unable to collect upon the Note and was damaged thereby.

WHEREFORE, plaintiff Prime Capital Group, Inc., requests that defendant be ordered to pay plaintiff the amount of $888,033.32, plus pre- and post-judgment interest at the rate of 6% per annum, and awarding reasonable costs and expenses, including attorneys' fees, and such other relief as shall be determined to be just.

### COUNT V

### (Conversion/Unjust Enrichment)

59.   Prime Capital Group, Inc., repeats and realleges the foregoing allegations as if set forth fully herein.

60.   AMI owes large sums of money to Prime Capital.

61.   At a time when AMI owed these sums of money, defendant Klein was converting large sums of money from AMI's business to his personal use.

10

62.  As a result, Klein was unjustly enriched by the amount taken from AMI.

63.  This unjust enrichment occurred at the expense of Prime Capital which was owed these sums from AMI.

WHEREFORE,  plaintiff  Prime  Capital  Group,  Inc., requests that defendant be ordered to pay plaintiff the amount  of  $2,404,560.26,  plus  pre-  and  post-judgment interest  at  the  statutorily-defined  rate,  and  awarding reasonable costs and expenses, including attorneys' fees, and such other relief as shall be determined to be just.

Dated:   January 22, 2007

David Stein
SMITH & STEIN
Attorneys for Plaintiff
Prime Capital Group, Inc.
Empire Corporate Center
25 Philips Parkway
Montvale, New Jersey 07645
(201) 391-0770