NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
PRIME CAPITAL GROUP, INC.            :
                                     :
            Plaintiff,               :    CIVIL ACTION NO. 07-414 (JLL)
                                     :
      v.                             :    **OPINION**
                                     :
MONROE J. KLEIN,                     :
                                     :
            Defendant.               :
_____:

**LINARES**, District Judge.

   This matter is before the Court by way of Defendant Monroe J. Klein's ("Defendant" or "Klein") motion to dismiss Plaintiff Prime Capital Group, Inc.'s ("Plaintiff" or "Prime Capital") complaint (the "Complaint") based on (1) the statute of limitations and (2) a lack of personal jurisdiction, as well as for failure to (3) join a necessary party under Rule 19 of the Federal Rules of Civil Procedure, and (4) state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court resolves this motion on the submissions of the parties, without oral argument. Fed. R. Civ. P. 78. For the reasons set forth herein, Defendant's motion is denied.[1]

---

[1] The Court exercises jurisdiction over this action pursuant to 28 U.S.C. § 1332. The Court will apply the substantive law of the state of New Jersey as it is sitting in diversity. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Am. Cyanamid Co. v. Fermenta Animal Health Co., 54 F.3d 177, 180 (3d Cir. 1995).

I. **Factual and Procedural History**[2]

Plaintiff Prime Capital Group, Inc., a New Jersey corporation with its principal place of business in New Jersey, entered into a contract with AM Industries, Inc. ("AMI"), also a New Jersey corporation, to purchase accounts receivable from AMI (the "Accounts Receivable Purchase Agreement" or "Agreement"). (Compl. ¶ 7.) The Agreement is dated October 17, 1995. (Id. at Ex. A.)

The business relationship between AMI and Prime Capital existed without issue until 2000 when AMI installed defendant Monroe J. Klein, a New York citizen, as President and Chairman of the Board. (Id. at ¶¶ 6, 9-10.) While Prime Capital and AMI continued to do business, AMI began accumulating large amounts of debt owing to Prime Capital. Such debt accrued as a result of Defendant Monroe J. Klein's alleged sale of fictitious (and thereby uncollectible) accounts receivable to Prime Capital, primarily from Linens N' Things. (Id. at ¶¶ 14, 48.) In March 2000, AMI entered into a promissory note with Prime Capital in the amount of $605,788.00, signed by Klein in his capacity as Chairman of AMI (the "Note"), for repayment of the monies owed. (Id. at ¶ 19.) According to Plaintiff, Klein signed the Note without any intention of honoring it. (Id. at ¶ 20.) AMI defaulted on the Note in March 2002 and failed to remit the monies owed despite Prime Capital's demands for payment. (Id. at ¶¶ 21-22.)

By 2005, AMI had sold approximately $1,424,233.96 in uncollected receivables to Prime

---

[2] The facts are culled from the Complaint and taken as true for purposes of this motion. In adjudicating the instant motion, the Court considers the operative complaint, the pleadings, and the contract between the parties, attached to the Complaint as "Exhibit A," because the Complaint specifically references said contract. See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2509 (2007); Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002).

Capital. (Id. at ¶¶ 11-13.) Plaintiff alleges that (1) the receivables remained uncollected because Klein had fabricated the invoices underlying said receivables (id. at ¶ 14) and (2) Klein accepted payments on some of the receivables at issue, but "retained the money for his personal use" (id. at ¶ 15). To insure the continued relationship between AMI and Price Capital, Klein purportedly assured AMI that he would use money secured from a loan from the 9/11 Compensation Fund to help repay part of AMI's debt. (Id. at ¶ 17.)[3] Klein informed Prime Capital thereafter that he was in fact going to use the funds from the loan to pay himself. (Id. at ¶ 18.)

AMI failed to file annual reports in 2004 and 2005, and ceased operations completely in 2005. Said failure resulted in the revocation of AMI's corporate registration by the New Jersey Department of Revenue. (Id. at ¶¶ 24-26.) In winding up the business, Klein committed to making arrangements for AMI to repay its outstanding debt to Prime Capital. (Id. at ¶ 27.) Klein never honored this promise and has refused to communicate with or respond to Prime Capital. (Id. at ¶¶ 28-29.) As of August 2006, AMI owed a total of $2,404,560.26, including accrued interest, to Prime Capital. (Id. at ¶ 30.) Plaintiff alleges that Klein himself must assume this debt as he had been "using AMI as his alter ego, without disclosing this to Prime Capital." (Id. at ¶¶ 30, 33.)

On January 25, 2007, Plaintiff filed a five-count complaint against Defendant, alleging breach of contract under the Accounts Receivables Purchase Agreement (Count I), breach of contract under the Note (Count II), fraud with respect to both the Agreement and the Note (Counts III, IV), and conversion and unjust enrichment (Count V). Five days later, on January

---

[3] According to the Complaint, Klein secured the loan from the 9/11 Compensation Fund sometime between 2003 and 2004. (Compl. ¶ 16.)

30, a summons was issued to Klein and on March 1, 2007, Plaintiff filed an affidavit of service for the summons, stating that the Complaint had been served on Defendant on February 23, 2007. On April 19, 2007, with no appearance having been made by Defendant, Prime Capital requested default and the Clerk of the Court entered default against Klein.  Prime Capital then moved for default judgment, but due to certain deficiencies in Plaintiff's submissions, the Court denied the motion.

On July 19, 2007, Defendant – without any prior contact with the Court – filed an answer to the Complaint, well after the time allowed for said filing.  The parties began discovery, but on January 22, 2008, counsel for Defendant filed a letter with the Court, requesting leave to file a motion to dismiss the Complaint on various grounds.  The Court granted leave and the instant motion followed on March 10, 2008.

**II.     Legal Standards**

    **A.     Rule 12(b)(6)**

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.[4]  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000).  However, courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint.  See In re

---

[4] In doing so, a court may look only to the facts alleged in the complaint and any accompanying attachments, and may not look at the record. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997). Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. See In re Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Moreover, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Id. Ultimately, however, the question is not whether plaintiffs will prevail at trial, but whether they should be given an opportunity to offer evidence in support of their claims. Scheuer, 416 U.S. at 236.

**B.      Rule 19**

A defendant may move to dismiss a complaint for plaintiff's failure to join an indispensable party. See Fed. R. Civ. P. 12(b)(7), 19.[5] It is the movant's burden to prove that a non-party is indispensable to the adjudication of the action. Am. Home Mortgage Corp. v. First Am. Title Ins. Co., No. 07-1257, 2007 WL 3349320, at *3 (D.N.J. Nov. 9, 2007) (Linares, J.) (citing Fed. Home Loan Mortgage Corp. v. Commonwealth Land Title Ins. Co., No. 92-5255, 1993 WL 95494, at *5 (E.D. Pa. March 31, 1993)). Rule 19 governs when joinder of a party is mandatory. Courts considering a Rule 19 motion must undertake a two-step inquiry. See Gen.

---

[5] In reviewing a motion to dismiss under Rules 12(b)(7) and 19, the court must accept all allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the non-moving party, just as with a Rule 12(b)(6) motion. See Jurimex Kommerz Transit G.M.B.H. v. Case Corp., 65 Fed. Appx. 803, 805 (3d Cir. 2003).

Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007); Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 404 (3d Cir. 1993).  The reviewing court must first determinate whether the absent party is "necessary" to the action.  Gen. Refractories Co., 500 F.3d at 312.  A party is "necessary" – and must be added to the action – if joinder is feasible. See Fed. R. Civ. P. 19(a); Gen. Refractories Co., 500 F.3d at 312.[6]  However, upon concluding that a party is "necessary," but joinder of said party is infeasible (e.g., where joinder destroys diversity of the parties and thus, the court's subject matter jurisdiction), the court looks to Rule 19(b) to determine if "in equity and good conscience," the party is "indispensable."  Fed. R. Civ. P. 19(b).  Should a court determine that the party is "indispensable," the court must determine whether "the action should proceed among the parties before it, or should be dismissed."  See Temple v. Synthes Corp., 498 U.S. 5, 8 (1990); Janney, 11 F.3d at 405.[7]  The Third Circuit has held that upon determining a party is "indispensable," the action cannot proceed.  Gen. Refractories Co., 500 F.3d at 312 (citing Janney, 11 F.3d at 404).

---

[6] Rule 19(a) provides in pertinent part: "A person . . . shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of that claimed interest."  Fed. R. Civ. P. 19(a).

[7] In its evaluation of whether a party is "indispensable" to an action, a court looks at four factors: the extent to which (1) a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the prejudice can be lessened or avoided through protective provisions in the judgment, the shaping of relief, or other measures; (3) a judgment rendered in the person's absence will be adequate; and (4) the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.  Fed. R. Civ. P. 19(b).

C. **Personal Jurisdiction**

A court may exercise personal jurisdiction over a defendant when there is a valid state law providing for jurisdiction over an individual and when the exercise of jurisdiction is consistent with the requirements of due process.  IMO Indus., Inc v. Kiekert AG, 155 F.3d 254, 259 (3d Cir.1998).  New Jersey's long-arm statute permits a court to exercise personal jurisdiction over non-residents to the extent permitted by the Due Process Clause of the Fourteenth Amendment.  Telcordia Tech. Inc. V. Telkom SA Ltd., 458 F.3d 172, 177 (3d Cir. 2006) (citing Charles Gendler & Co., Inc. v. Telecom Equip. Corp., 102 N.J. 460, 508 (1986)).  Due process requires an individual to establish meaningful contacts with the forum state before the individual may be subjected to binding judgments in that state.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)).  Indeed, a court may assert personal jurisdiction over a defendant when the defendant has maintained "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Telcordia Tech., 458 F.3d at 177 (citing Int'l Shoe, 326 U.S. at 316)).

The United States Supreme Court has held that an individual cannot be haled into a foreign forum for "attenuated" or "random" contacts.  Burger King Corp., 471 U.S. at 475 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984)).  However, as long a defendant has "purposefully directed" his or her activities toward a forum resident, a court may assert personal jurisdiction over the defendant.  Id. at 473.

If a defendant has established "continuing obligations" between himself and a party in the forum state, jurisdiction is proper.  Id. at 476 (citing Travelers Health Assn. v. Virginia, 339 U.S.

643 (1950)).  Personal jurisdiction does not require physical presence in the forum state. Telcordia Tech., 458 F.3d at 177 (citing Burger King, 471 U.S. at 476).  Indeed, mail and wire communications can satisfy the requirement of purposeful contacts with the forum state.  Id.  An individual must also have fair warning that he or she could be subjected to jurisdiction in a foreign court for activities conducted within the foreign state.  Burger King, 471 U.S. at 472 (citing Shaffer v. Heitner, 433 U.S. 186, 218 (1977)).  Defendants have "fair warning" simply by directing their activities at residents of the forum.  Id. at 471.

      A court may exercise personal jurisdiction over a nonresident in two circumstances. First, a court may exercise "general jurisdiction" over a defendant if the defendant's contacts with the forum state are "continuous and systematic."  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984).  General jurisdiction may exist even if "the claim does not arise out of or is unrelated to the defendant's contacts with the forum."  Dollar Savings Bank, N.A., v. First Sec. Bank, N.A., 746 F.2d 208, 211 (3d Cir.1984).  In order to establish general jurisdiction, the plaintiff must demonstrate that the defendant had "continuous and substantial forum affiliations." Id. at 212.

      Second, "specific jurisdiction" permits a court to exercise personal jurisdiction over a defendant when "the claim is related to or arises out of the defendant's contacts with the forum." Id. at 211.  Assessing whether a court has specific jurisdiction over a defendant requires an analysis of whether the defendant engaged in minimum contacts with the forum state.  Id. at 212. The assessment also requires an analysis of whether the defendant foresaw that his activity and contact with the forum state were "such that he should reasonably anticipate being haled into court there."  Id. (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980)).

With these frameworks in mind, the Court now turns to the instant motion.

**III.    Discussion**

    **A.    Statute of Limitations**

Defendant contends that the entirety of Plaintiff's claims are barred by the one-year statute of limitations set forth in the Agreement. (Def. Br. at 3.) Paragraph 26(d) of the Agreement specifies that "no action shall be entertained by . . . any court of competent jurisdiction if filed more than one year subsequent to the date the cause(s) of action actually accrued regardless of whether damages were otherwise as of said time calculable." (Compl., Ex. A. at ¶ 26(d).)[8]

"[W]here the terms of a contract are clear, 'the court must enforce those terms as written.'" Brauser Real Estate, LLC v. Meecorp Capital Markets, LLC, No. 06-1816, 2008 WL 324402, at *9 (D.N.J. Feb. 4, 2008) (citing Atlantic City Racing Ass'n v. Sonic Fin. Corp., 90 F. Supp. 2d 497, 506 (D.N.J. 2000)). The terms of the contractual provision at issue here are clear and unambiguous: the parties agreed to a one-year statute of limitations. The provision is enforceable because New Jersey recognizes that parties to a contract may reduce the applicable limitations period to one year, if reasonable. See A.J. Tenwood Assoc. v. Orange Senior Citizens Housing Co., 200 N.J. Super. 515, 523 (App. Div.), certif. denied, 101 N.J. 325 (1985) (finding a one-year limitations period for a construction contract governed by N.J.S.A. 2A:14-1 was "neither unfair nor unreasonable").[9]

---

[8] The same provision specifies that the Agreement, and all transactions contemplated thereby, shall be governed by New Jersey law. (Compl., Ex. A. at ¶ 26(d).)

[9] The parties dispute whether the Agreement is governed by N.J.S.A. 12A:2-725, governing contracts for the sale of goods, or N.J.S.A. 2A:14-1, applicable to all other contractual

Normally a cause of action accrues when a plaintiff has suffered an injury and is cognizant of the causal connection between said injury and the actor. Cetel v. Kirwan Fin. Group, Inc., 460 F.3d 494, 513 n.15 (3d Cir. 2006). However, "[w]hen the gist of the action is fraud concealed from the plaintiff, the statute begins to run on discovery of the wrong or of facts that reasonably should lead the plaintiff to inquire into the fraud." S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 425 (3d Cir. 1999). Both fraud involving "active concealment by a defendant after a fraud is committed" and fraud "which goes undiscovered even though the defendant has done nothing to conceal [it]" toll a statutory limitations period. B.F. Hirsch, Inc. v. Enright Refining Co., 577 F. Supp. 339, 344 (D.N.J. 1983), aff'd in part, vacated in part on other grounds, 751 F.2d 628 (3d Cir. 1984). In the latter case, the statute beings to run when the plaintiff should have discovered the fraudulent scheme, not when the scheme itself is actually brought to light. Id.

Prime Capital asserts that Klein's fraud should toll the statute of limitations. (See Pl. Opp'n at 5.) Plaintiff maintains that Klein (1) used monies he had promised to Prime Capital to pay himself (Compl. ¶¶ 17-18) and (2) vowed to make arrangements to pay AMI's debt at the time AMI ceased operations, but failed to do so (id. at ¶¶ 27-28). Taking these allegations in the light most favorable to Prime Capital, the Court finds that Klein "actively concealed" his fraud such that the statute of limitations should be tolled until the point when the scheme was, or should reasonably have been, "ultimately uncovered." See B.F. Hirsch, Inc., 577 F. Supp. at 344. Although the Complaint does not set forth the date on which Plaintiff became aware of

---

claims. Accounts receivable do not fall under the definition of "goods" as defined in the Uniform Commercial Code as adopted by New Jersey, N.J.S.A. 12A:2-101, et seq. See N.J.S.A. 12A:2-105(1). Thus, N.J.S.A. 2A:14-1 applies to the Agreement.

Defendant's fraudulent actions, the Court will construe August 2006 – the last estimate of payment due to Prime Capital by AMI (Compl. ¶ 30) – as the date Prime Capital should reasonably have become aware of said fraud. Plaintiff filed the Complaint on January 25, 2007, well within the tolled one-year limitations period, i.e., August 2007.

While it is clear to the Court that the breach of contract claim as to the Agreement should be governed by the one-year provision, the breach of contract claim as to the Note should not. Defendant asserts that the Note "was intended as an additional representation to Plaintiff that the payments under the Purchase Agreement would be made. Any payments to be made with regard to the Note arose directly out of Purchase Agreement." (Def. Reply Br. at 5.) Plaintiff nonetheless contends that the Note is independent of the contract in question. (Pl. Opp'n at 5.)[10] Because the Note does not reference the Agreement in any way and because Defendant does not offer evidence that the Note is premised on, or connected to, the Agreement, the Court finds the Note separate and distinct from the Agreement. As a stand-alone contract, Plaintiff's breach of contract claim for the Note is governed by a six-year statute of limitations, see N.J.S.A. 2A:14-1, and thus, has been timely brought.

With respect to Prime Capital's remaining claims, the Court finds that they are not so inextricably linked to the Agreement as to be considered under the one-year statute of limitations. Regardless, the Agreement stated a one-year limitations period for any claims arising out of it and the Complaint was brought prior to August 2007. Thus, the Court denies Defendant's motion to dismiss the action on these grounds.

---

[10] Neither party directs the Court to caselaw regarding the relationship between an original purchase agreement and a separate promissory note predicated on a debt arising out of said agreement.

B.     **Jurisdiction**

1.     **Failure to Join a Necessary Party**

Defendant asserts that this action cannot be heard for lack of subject matter jurisdiction, arguing that Plaintiff has artificially created diversity jurisdiction under 28 U.S.C. § 1332 by omitting AMI, a "necessary" or "indispensable" party to the action under Rule 19. (Def. Br. at 6.) Not so, according to Plaintiff, as (i) Klein operated AMI as his alter ego[11] and (ii) AMI no longer exists, making joinder futile. (Pl. Opp'n at 6.) Defendant asserts, however, AMI's status as an inactive corporation should not have any "bearing on whether it is the proper party to be added to this lawsuit." (Def. Reply Br. at 9.) Citing Rule 19(a)(1)(A), Klein contends that the Court cannot grant full relief to Prime Capital in the absence of AMI. (Def. Reply Br. at 7.)

Joinder of AMI, a New Jersey corporation, would destroy the diversity of the parties. Thus, the Court looks not to Rule 19(a), but to Rule 19(b) to determine whether "in equity and in good conscience" AMI is "indispensable" to the action. See Fed. R. Civ. P. 19(b); Janney, 11 F.3d at 405. Under New Jersey law, AMI is a "dissolved" – not an inactive – corporation. See N.J.S.A. 14A:4-5(5).[12] A dissolved corporation "shall continue to function in the same manner as if dissolution had not occurred," and thus "may sue and be sued in its corporate name." N.J.S.A. 14A:12-9(2). While AMI is still vulnerable to suit in its dissolved state, it need not be joined under Rule 19(b). "Although [AMI] may well be an eligible defendant, there is little

---

[11] This argument is addressed fully in Part III.C, infra.

[12] "In the event a domestic corporation fails to file an annual report for two consecutive years with the State Treasurer, then . . . the State Treasurer may issue a proclamation declaring the certificate of incorporation of the corporation has been revoked and that all powers conferred by law upon it shall thereafter be inoperative and void."

reason for [Prime Capital] to sue it. A judgment against a defunct corporation is of little value." Stiefel & Co. v. Blitz, No. 93-6080, 1993 WL 526386, at *2 (S.D.N.Y. Dec. 14, 1993).

Furthermore, Defendant fails to point the Court to any evidence of the Rule 19(b) factors: there is no discussion of the prejudice either Klein or AMI would suffer if the action is adjudicated in AMI's absence. As the Court is advised that "cases should [not] be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes a just resolution of the action impossible," Curley v. Brignoli, Curley & Roberts Assoc., 915 F.2d 81, 90 (2d Cir. 1990) (collecting cases), it does not find that AMI is a necessary or indispensable party under Rule 19.

### 2. Personal Jurisdiction

Klein contests the Court's jurisdiction over him because he (a) was not served in accordance with Federal Rule of Civil Procedure 4(k) and (b) does not have sufficient contacts with the state of New Jersey. (Def. Br. at 10.) Counsel for Plaintiff filed a certification with the Court, averring that upon being contacted by counsel for Defendant with a request for an extension of time to answer the Complaint <u>after</u> the Clerk of the Court had already entered default against Klein, Defendant's counsel agreed "to waive challenges to adequacy of service and personal jurisdiction." (Certification of David Stein, ¶ 8.) Defense counsel contests this representation, but only in the reply brief filed with the Court, not in a sworn certification or affidavit. Based on Plaintiff's counsel's sworn statement, the Court deems both the service and personal jurisdiction arguments waived. Even assuming *arguendo* that no such agreement existed, the Court retains jurisdiction as both arguments fail on their merits.

### a. Service of Process

Rule 4(k) specifies that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k).  However, service is also proper within a judicial district of the United States when service is completed "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made . . . ." Fed. R. Civ. P. 4(e)(1). In New Jersey,

> [i]f personal service cannot be effected after a reasonable and good faith attempt, . . . service may be made by mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, to the usual place of abode of the defendant or a person authorized by rule of law to accept service for the defendant or, with postal instructions to deliver to addressee only, to defendant's place of business or employment.

N.J.R. 4:4-3(a). In New York, service may be effected

> by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . . .

New York Civ. L. & R. ("CPLR") § 308(2).  When service by this means cannot be made, proper service can be made in New York "by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by . . . mailing the summons to such person at his or her last known residence." CPLR § 308(4). Here, Plaintiff asserts that the process server only posted the summons and complaint "after the individual there refused to accept the documents" (Pl. Opp'n at 9), evidencing proper service of

14

Defendant under both the New Jersey and New York rules.[13]

### b. Specific Jurisdiction

Plaintiff asserts that the Court has specific jurisdiction over Klein as he had "minimum contacts" in New Jersey such that he should reasonably anticipate being haled into court here. (See Pl. Opp'n at 7-8.)  The Court agrees.  Defendant Klein was the President and Chairman of the Board of AMI, a corporation registered under the laws of the State of New Jersey, conducting business in New Jersey.  Moreover, taking the allegations in the Complaint as true, Klein, in his position as President of AMI, siphoned money out of a New Jersey corporation and conducted fraudulent activity from his position.  Defendant's position at AMI as well as his alleged fraud and conversion within a New Jersey corporation gave him "fair warning" that he would be susceptible to suit here.  The Court may exercise jurisdiction over defendant Klein and declines to dismiss the action on these grounds.

### C. Dismissal of the Complaint for Failure to State a Claim

Prime Capital argues that the Court may pierce the corporate veil to hold Klein liable on the causes of action asserted.  (Compl. ¶¶ 33, 38; Pl. Opp'n at 10.)  Defendant seeks dismissal of the Complaint because Plaintiff's claims are based on a contract to which Klein was not a party and a Note that Klein signed in a professional – not individual – capacity.  (Def. Br. at 11.)  In

---

[13] Plaintiff filed a certification on May 1, 2008, after Defendant had filed his reply papers. Said certification attested to the facts of proper service. (Certification of Nicole Zukasky at ¶¶ 5-9.) Defendant filed a letter on May 2, 2008, requesting that the Court disregard the certification as it was untimely.  While the Court generally does not reward inadvertence such as Plaintiff's here, because Plaintiff originally made such assertions in its opposition papers and because consideration of the allegations in the certification will not change the disposition of the motion, the Court will consider the assertions for purposes of adjudicating the motion.

New Jersey, a court may ignore the corporate form and impose "alter ego" liability in order "to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law . . . ." State Dep't of Envtl. Protect. v. Ventron Corp., 94 N.J. 473, 500 (1983) (internal citations omitted).

While the corporate veil is usually pierced in the parent-subsidiary context, courts may also pierce to reach individual owners, shareholders, or corporate officers. See Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 172 n.9 (3d Cir. 2002) ("Shareholders have also been found liable when they have totally dominated the corporation, failed to maintain the corporate identity, and used the corporation to perpetrate fraud, injustice or some other illegality"); Hartford Fire Ins. Co. v. Conestoga Title Ins. Co., 328 N.J. Super. 456, 458, 461-62 (App. Div. 2000) (finding an individual who served as president of a corporation liable when he acted as a corporation's "alter ego" in disregarding the corporate form).  In order to pierce the corporate veil in New Jersey, a plaintiff must establish that: (1) the shareholder or parent so dominated the corporation or subsidiary that the two entities did not have a separate existence and (2) the shareholder or parent used the corporation or subsidiary "to perpetrate a fraud or injustice, or otherwise to circumvent the law." Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 149 (3d Cir. 1988).  In considering whether to pierce the corporate veil, courts take various factors into account, including

> gross undercapitalization . . . 'failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.'

Craig, 843 F.2d at 150 (quoting Am. Bell, Inc. v. Federation of Tel. Workers, 736 F.2d 879, 886

(3d Cir. 1984)).  Courts consider two prominent "hallmarks" of the abuse of the privilege of incorporation: (i) the failure to engage the subsidiary in its own independent business due to exclusive performance of services for the parent or shareholder and (ii) the undercapitalization of the subsidiary to the extent that it is judgment-proof.  Nassau Constr. Co., Inc. v. Pulte Homes, Inc., No. 07-5536, 2008 WL 2235609, at *3 (D.N.J. May 29, 2008) (quoting OTR Assocs. v. IBC Servs., Inc., 353 N.J. Super. 48, 51 (App. Div. 2002)).

When a plaintiff looks to pierce the corporate veil based on fraud, the plaintiff must comply with the heightened pleading standard of Rule 9(b).  Foodtown, 296 F.3d at 173 n.10. Rule 9(b) requires that the complaint describe the circumstances of the fraud "with 'precise allegations of date, time, or place' or by using some means of 'injecting precision and some measure of substantiation into the[] allegations . . . .'"  Id. (quoting Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 1999)).  Regardless, the Rule 8(a) requirements remain in place with respect to the first prong of the inquiry.  See id.

As to said prong, Plaintiff states that Klein used AMI as his "alter ego, without disclosing [it] to Prime Capital."  (Compl. ¶¶ 33, 38.)  While a plaintiff may not rely on "labels" and "conclusions" to state a claim, Twombly, 127 S.Ct. at 1965, the Court finds that Plaintiff has alleged facts "enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true . . . ."  Id. at 1964-65.  Prime Capital's allegations of Defendant's fraud intimates AMI's "gross undercapitalization" in that Defendant fabricated accounts receivable in order to obtain money from Prime Capital.  (See Compl. ¶¶ 14, 43, 48.) The same claims also lead the Court to believe both that AMI was insolvent at the time that Klein made the alleged promises of repayment and that AMI is likely judgment-proof, at this point in

time.  Furthermore, Klein's inability to "distin[guish] between [his own] pocketbook[] and the corporate pocketbook" demonstrates his disregard for the corporate form.  See Erickson v. Leonard, No. 47-02, 2008 WL 706278, at *7 (N.J. Super. App. Div. March 18, 2008).  The allegations in the Complaint adequately meet the first prong of the veil-piercing test.  See Ripley v. Eon Labs, Inc., No. 07-912, 2007 WL 2406806, at *6 (D.N.J. Aug. 16, 2007) (denying defendant's motion to dismiss the complaint where the plaintiff had made similar allegations, including "at all relevant times [defendant] acted in all aspects as agent and alter ego . . .").

Plaintiff has plead fraud in compliance with the requirements of Rule 9(b).  Plaintiff alleges that Defendant (a) accepted monies paid to AMI for Accounts Receivable and "retained the money for his personal use," (b) used money from a loan obtained for AMI for his own benefit, and (c) led Plaintiff to believe that AMI was still functioning as a corporation when in fact it was "nominally" so.  (Compl. ¶¶ 15, 16, 18.)  Allegations of Klein's blatant and repeated use of AMI to perpetrate the fraud and conversion alleged here satisfies the second prong of the inquiry.[14]  Thus, taking the allegations in the Complaint in the light most favorable to Prime Capital, the Court finds that "[t]he issue of whether the corporate veil of [AMI] can be pierced is primarily a question of fact [and Prime Capital] ha[s] alleged sufficient facts to state a claim and should be permitted to proceed with discovery to further develop the factual record."  See

---

[14] Defendant cites Mitsui O.S.K. Lines v. Cont'l Shipping Line, Inc., No. 04-2278, 2007 WL 1959250 (D.N.J. June 29, 2007), for the proposition that the Court should not pierce the corporate veil here as it is not an "extraordinary circumstance."  (Def. Reply Br. at 16.)  This case is distinguishable in its disposition: the Court is adjudicating a motion to dismiss while the Mitsui Court reviewed veil piercing at the summary judgment stage.  Defendant overlooks the fact that the requirements to survive summary judgment are much more stringent than those for dismissal of a claim or complaint.  Compare Fed. R. Civ. P. 56 with Fed. R. Civ. P. 12(b)(6).

Melikian v. Corradetti, 791 F.2d 274, 282 (3d Cir. 1986).  Consequently, Klein's motion to dismiss the Complaint is denied on these grounds.

**IV.     Conclusion**

For the aforementioned reasons, Defendant's motion to dismiss Plaintiff's complaint is denied.  An appropriate Order accompanies this Opinion.


Dated: July 28, 2008                                                    /s/ Jose L. Linares
                                                                                        United States District Judge